**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **TRACEY FREEMAN,** | : | **CIVIL ACTION** |
| **Petitioner,** | : | |
| | : | |
| **v.** | : | **NO.   14-cv-5139** |
| | : | |
| **MICHAEL WENEROWICZ, et al.** | : | |
| **Respondents.** | : | |

## REPORT AND RECOMMENDATION

**LYNNE A. SITARSKI**
**UNITED STATES MAGISTRATE JUDGE**                         **March 31, 2015**

Presently before the Court is a *pro se* petition for a writ of habeas corpus, filed pursuant to 28 U.S.C. § 2254, by Tracey Freeman, an individual currently incarcerated at the State Correctional Institution in Graterford, Pennsylvania.  For the following reasons, I respectfully recommend that the petition be DISMISSED for failure to exhaust state-court remedies.[1]

## I.      FACTS AND PROCEDURAL HISTORY

On October 30, 1992, Petitioner was sentenced to a term of 8.5 to 20 years' imprisonment for committing the crime of murder in the third degree.  *Commonwealth v. Freeman*, No. CP-51-CR-0739031-1990 (Phila. Cty. Com. Pl.), Criminal Docket at 2.  The original minimum and maximum dates for this sentence were January 1, 1999 and July 1, 2010, respectively.  (Decl. of Rachel Macnamara, Resp.'s Attach. A ¶ 8, ECF No. 12-1).  On June 30, 1999, Petitioner was paroled from this sentence.  (*Id.* ¶ 9).

---

[1]  The Honorable Paul S. Diamond referred this matter to the undersigned for a Report and Recommendation.  (Order, ECF No. 4).

Petitioner was arrested on new criminal charges on June 21, 2004, and the Parole Board (the "Board") lodged a detainer against him that same day. (*Id.* ¶ 10). Those criminal charges were subsequently withdrawn on November 8, 2004, but Petitioner remained confined on the Board detainer until November 16, 2004, at which point Petitioner was again released on parole. (*Id.* ¶¶ 11-12).

On September 20, 2006, Petitioner committed a parole violation by absconding from his legally approved residence at the Eagleville Halfway Back Program. (*Id.* ¶ 13). The Board issued a warrant for his arrest. (*Id.* ¶ 14). Petitioner was arrested on that warrant on November 20, 2006, sixty-one days later. (*Id.*). In a decision dated January 30, 2007, the Board recommitted Petitioner to serve twelve months back time as a technical parole violator for changing his residence without permission and for failing to successfully complete the Eagleville program. (*Id.* ¶ 15); *see also* (Resp.'s Ex. 5, ECF No. 12-2). Based on the sixty-one days he was delinquent, the Board re-computed his maximum sentence date to August 31, 2010. (Resp.'s Ex. 5).

Petitioner was re-paroled on September 17, 2008. (Decl. of Rachel Macnamara, Resp.'s Attach. A ¶ 16). Approximately one year later, on September 24, 2009, Petitioner absconded from parole by failing to report and by making himself unavailable. (*Id.* ¶ 18); (Resp.'s Ex. 8, ECF No. 12-2). Petitioner remained at large for 469 days, until he was arrested by the United States Marshal Task Force and the Philadelphia Fast Unit on January 6, 2011. (Resp.'s Ex. 8, ECF No. 12-2). At the time of Petitioner's arrest, he was in possession a firearm, 4.3 grams of marijuana, and a digital scale. (*Id.*).

Petitioner was charged in new criminal proceedings for the possession offenses.[2]  *See Commonwealth v. Freeman*, No. CP- 51-CR-0000893-2011 (Phila. Cty. Com. Pl.), Criminal Docket 1-3.  In a decision dated March 17, 2011, the Board detained Petitioner pending the disposition of these charges.  (Resp.'s Ex. 10, ECF No. 12-2).  In its detainer, the Board stated that following the resolution of Petitioner's new criminal charges, it would recommit him as a technical parole violator for multiple violations, including changing residence without permission and failure to report.  (*Id.*).  Furthermore, the Board extended Petitioner's maximum sentence an additional 469 days, from August 31, 2010 to December 13, 2011, to account for his delinquency.  (*Id.*).  Petitioner was instructed that, if he wished to appeal this decision, he had to file a request for administrative relief within thirty days.  (*Id.* at 2).  Petitioner did not file an appeal.

Petitioner was released on his own recognizance on March 29, 2011, however, he remained in custody pursuant to the Board's detainer.  (Decl. of Rachel Macnamara, Resp.'s Attach. A ¶ 22).  Upon the expiration of Petitioner's maximum sentence on December 13, 2011, the Board lifted its detainer against him.  (*Id.* ¶ 24).  Petitioner was then released to the custody of the Philadelphia County Prison to stand trial for the possession charges.  (Resp's Ex. 14 ¶ 9, ECF No. 12-2).

---

[2]  Specifically, Petitioner was charged with one count of Possession of a Firearm by a Prohibited Person in violation of 18 Pa. Cons. Stat. § 6105(a)(1); one count of Possession of an Instrument of a Crime with Intent to Employ it Criminally in violation of *id.* § 907(a); one count of Intentional Possession of a Controlled Substance in violation of 35 Pa. Cons. Stat. § 780-113(a)(16); one count of Use or Possession of Drug Paraphernalia in violation of *id.* § 780-113(a)(32); and one count of Possession of Marijuana in violation of *id.* § 780-113(a)(31), Crim. Docket at 3-4.

3

On December 10, 2013, Petitioner pled guilty to one count of Possession of a Firearm by a Prohibited Person in violation of 18 Pa. Cons. Stat. § 6105(a)(1) and one count of Possession of an Instrument of a Crime with Intent to Employ it Criminally in violation of 18 Pa. Cons. Stat. § 907(a). (Resp.'s Ex. 11, ECF No. 12-2). He was sentenced to 2.5 to 5 years' imprisonment and a maximum of 4.5 years' probation, to run consecutively. (*Id.*).

On February 11, 2014, Petitioner waived his right to a hearing on his revocation of parole. (Resp.'s Ex. 12, ECF No. 12-2). In this waiver, he acknowledged that he pled guilty to new criminal offenses punishable by imprisonment and that the conduct underlying those charges occurred while he was on parole. (*Id.*). The Board lodged its detainer again on February 19, 2014. (Decl. of Rachel Macnamara, Resp.'s Attach. A ¶ 28).

In a decision dated April 17, 2014, and mailed April 25, 2014, the Board recommitted Petitioner as a technical parole violator per its March 17, 2011 decision and recommitted Petitioner as a convicted parole violator to serve twenty-four months back time for the possession offenses. (Resp.'s Ex. 13, ECF No. 12-2). Petitioner was deemed ineligible for re-parole until June 5, 2015, and his parole violation maximum date was recalculated to April 7, 2022. (*Id.*).

Petitioner timely filed an appeal for administrative review on May 18, 2014. (Resp.'s Ex. 14, ECF No. 12-2). By letter dated September 30, 2014 and received October 8, 2014, Petitioner submitted a letter to the Board requesting to withdraw his appeal for review of the Board's April 17, 2014 decision. (Resp.'s Ex. 15, ECF No. 12-2). On November 5, 2014, the Board issued a letter deeming the appeal withdrawn. (Resp.'s Ex. 16, ECF No. 12-2). Petitioner replied via letter on November 11, 2014 that he never sent the October 8 letter and did not wish to withdraw

his administrative appeal.  (Traverse Ex. F, ECF No. 13).  In a decision mailed December 29, 2014, the Board revised Petitioner's maximum sentence from April 7, 2022 to March 14, 2022, due to a calculation error.  (Resp.'s Ex. 17, ECF No. 12-2).  This decision advised Petitioner that he had until January 28, 2015, thirty days from the date of mailing, to appeal.  (*Id*.).

On September 4, 2014,  Petitioner filed in federal court a petition for writ of habeas corpus pursuant 28 U.S.C. § 2241, contending that the Parole Board's recalculation of his maximum sentence date violated the Due Process clause, the collateral estoppel doctrine, the prohibition against cruel and unusual punishment, and the Double Jeopardy clause.  (Pet., ECF No. 1).  Following the District Court's order (ECF No. 2), he properly resubmitted these claims as a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on September 19, 2014.[3] (Pet'r's *pro se* Hab. Pet., ECF No. 3).  On December 29, 2014, the Commonwealth filed a Response, arguing that Petitioner's claims were unexhausted and, in any event, meritless.  (Resp., ECF No. 12).  On January 15, 2015, Petitioner filed a Traverse Brief in reply, contending that his claims are exhausted.  (Pet'r's Traverse Br. 8-13, ECF No. 13).

## II.      STANDARD OF REVIEW AND EXHAUSTION UNDER AEDPA

---

[3] By letter dated September 30, 2014, Petitioner advised the Court that he wished to withdraw his § 2254 application to pursue his state court remedies; however, for unknown reasons, this letter was not docketed until January 29, 2015.  (ECF No. 14).  Because Petitioner's Traverse Brief omitted to reference that he had previously requested to withdraw his habeas petition, the Court ordered Petitioner to elect to either proceed with his habeas Petition or to withdraw to pursue his state court remedies.  (Order, ECF No. 15).  On March 3, 2015, Petitioner elected to proceed with the claims raised in his habeas petition.  (Pet'r's Election Notice, ECF No. 16).

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") grants to persons in state or federal custody the right to file a petition in a federal court seeking the issuance of a writ of habeas corpus.  *See* 28 U.S.C. § 2254.  The AEDPA increased the deference federal courts must give to the factual findings and legal determinations of the state courts.  *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002); *Werts v. Vaughn*, 228 F.3d 178, 196 (3d Cir. 2000).  Pursuant to 28 U.S.C. § 2254(d), as amended by the AEDPA, a petition for habeas corpus may be granted only if:  (1) the state court's adjudication of the claim resulted in a decision contrary to, or involved an unreasonable application of, "clearly established Federal law, as determined by the Supreme Court of United States;" or (2) the adjudication resulted in a decision that was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1)-(2).  Factual issues determined by a state court are presumed to be correct, and the petitioner bears the burden of rebutting this presumption by clear and convincing evidence.  *Werts*, 228 F.3d at 196 (*citing* 28 U.S.C. § 2254(e)(1)).

Pursuant to the AEDPA, "a district court ordinarily cannot grant a petition for a writ of habeas corpus arising from a petitioner's custody under a state court judgment unless the petitioner first has exhausted his available remedies in state court."  *Houck v. Stickman*, 625 F.3d 88, 93 (3d Cir. 2010) (citing 28 U.S.C. § 2254(b)).  A petitioner will not be deemed to have exhausted available state remedies if he has the right under state law to raise, by any available procedure, the question presented.  28 U.S.C. § 2254(c); *O'Sullivan v. Boerckel*, 526 U.S. 838, 847–48 (1999) ("[W]e ask not only whether a prisoner has exhausted his state remedies, but also whether he has *properly* exhausted those remedies, *i.e.*, whether he has fairly presented his claims to the state courts.").  The exhaustion requirement is rooted in considerations of comity,

6

and is designed to protect the role of the state court in the enforcement of federal law and to prevent disruption of state judicial proceedings. *Duncan v. Walker*, 533 U.S. 167, 179 (2001) (quoting *Rose v. Lundy*, 455 U.S. 509, 518 (1982)); *see also Castille v. Peoples*, 489 U.S. 346, 349 (1989). The burden is on the habeas petitioner to prove exhaustion. *DeFoy v. McCullough*, 393 F.3d 439, 442-43 (3d Cir. 2005) (citing *Toulson v. Beyer*, 987 F.2d 984, 987 (3d Cir. 1993)).

A federal court may excuse the exhaustion requirement if it would be futile for the petitioner to seek relief in the state court system. *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981); *Toulson v. Beyer*, 987 F.2d 984, 986 (3d Cir. 1993); 28 U.S.C. § 2254(b)(1)(B)(i)-(ii). Such claims are considered procedurally defaulted. A federal court may not consider a procedurally defaulted claim unless "the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim[] will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). To demonstrate cause, the petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). "Examples of external impediments which have been found to constitute cause in the procedural default context include 'interference by officials,' 'a showing that the factual or legal basis for a claim was not reasonably available to counsel,' and 'ineffective assistance of counsel.'" *See United States v. Pelullo*, 399 F.3d 197, 223 (3d Cir. 2005) (quoting *Wise v. Fulcomer*, 958 F.2d 30, 34 n.9 (3d Cir. 1992)). To show prejudice, a petitioner must show more than a potential for prejudice, but rather that the error "'worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional

dimensions.'"  *Murray*, 477 U.S. at 494 (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)).  If a petitioner fails to satisfy both prongs, the procedural default may not be excused.

To demonstrate a fundamental miscarriage of justice, a petitioner must show that a "'constitutional violation has probably resulted in the conviction of one who is actually innocent.'"  *Schlup v. Delo*, 513 U.S. 298, 327 (1995) (quoting *Murray*, 477 U.S. at 496).  This "actual innocence" is satisfied if petitioner can show that, in light of new evidence, it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt. *Id.*; *Houck*, 625 F.3d at 93.

## III.    DISCUSSION

In his § 2254 application, Petitioner contends that the Board's recalculation of his maximum sentence on his October 30, 1992 conviction violates the Fifth Amendment's double jeopardy protections; the Eighth Amendment's protections against cruel and unusual punishment; due process and equal protection under the law; and what he describes as a "collateral estoppel doctrine violation."  (Pet'r's Traverse Br. 14-18).  The Commonwealth responds that these claims are unexhausted and therefore, the petition must be dismissed.  (Resp. at 10-11).  In the alternative, the Commonwealth asserts that none of Petitioner's claims justify habeas relief because the maximum date of March 14, 2022 was properly calculated by the Board in accordance with a state law that has passed constitutional muster.  (Resp. at 12-13).

As set forth below, the Court agrees that Petitioner has not properly exhausted his state court remedies, and since the time to do so has passed, these claims are procedurally defaulted.

In any event, even evaluating the petition on the merits, the Court concludes that Petitioner is not entitled to habeas relief.

### A.      Exhaustion and Default

To properly exhaust a claim involving a determination by the Parole Board, the petitioner must first seek administrative review with the Parole Board within thirty days of the mailing date of the Board's decision.  37 Pa. Code § 73.1(b).  Once the Parole Board has rendered a final decision, the petitioner must then seek review within thirty days in the Commonwealth Court pursuant to 42 Pa. Cons. Stat. § 763(a) and Rules 1512 and 1513 of the Pennsylvania Rules of Appellate Procedure.  *See* 42 Pa. Cons. Stat. Ann. § 763(a).  Finally, to satisfy the exhaustion requirement, he must seek review of the Commonwealth Court's decision in the Pennsylvania Supreme Court.  *Pagan v. Pennsylvania Bd. of Prob. & Parole*, No. 08–150, 2009 WL 210488, *3 (E.D.Pa. Jan.22, 2009) (describing process); *Brown v. Pennsylvania Bd. of Prob. and Parole*, 2010 WL 2991166 (E.D.Pa. July 28, 2010) (same).  If a petitioner fails to seek review from the Supreme Court of Pennsylvania, the state claim is unexhausted.  *See Williams v. Wynder*, 232 F. App'x 177, 180 (3d Cir. 2007) (not precedential).

Here, the Board's initial recalculation of Petitioner's maximum date, following his guilty plea on the possession offenses committed while he was paroled, was made on April 17, 2014 and transmitted to Petitioner in a decision mailed on April 24, 2014.  (Resp.'s Ex. 13).  Pursuant to 37 P.a Code. §73.1, and as described in the Notice of the Board's action, he had thirty days to petition for administrative review of that decision.  It is undisputed that Petitioner timely filed his appeal on May 18, 2014.  (Resp.'s Ex. 14).  However, prior to receiving a final decision from the Board on this appeal, and instead of filing a request for review, Petitioner filed a mandamus

petition in Commonwealth Court. (*Freeman v. Pa. Bd. of Prob. and Parole*, 448 M.D. 2014, Pet'r's Traverse Br. Ex. C). The Commonwealth Court dismissed the petition on procedural grounds, concluding that the appeal was untimely and improperly filed. (*Id.*) ("[s]uch an action is properly brought in this court's appellate jurisdiction . . . and this court's original jurisdiction cannot be used to revive lapsed appeal rights."). This improperly filed petition does not satisfy the exhaustion requirement.[4] In any event, even if Petitioner's attempt to request review in the Commonwealth Court were proper, Petitioner still would not have satisfied the exhaustion requirement because he failed to appeal to the Pennsylvania Supreme Court.[5]

Notwithstanding Petitioner's failure to exhaust his state-court remedies with respect to the April 24, 2014 decision, Petitioner obtained new administrative appeal rights when the Board recalculated his maximum date in the December 29, 2014 decision. As indicated in the Board notice, these appeal rights expired on January 28, 2015. (Resp.'s Ex. 17, ECF No. 12-2). Though the Commonwealth briefed this issue in its Response to this Court on December 29, 2014, (Resp. 11-12), Petitioner has failed to demonstrate that he exhausted his state court

---

[4] Petitioner does not dispute that he did not have a final decision from the Board at the time he filed his petition for mandamus. Rather, he argues that his petition for mandamus in the state court was, in fact, proper because the Board failed to render a final decision within thirty of days of Petitioner's timely filed appeal. (Pet'r's Traverse 9). However, there is no legal support for Petitioner's argument that the Board was required to respond within thirty days. Petitioner cites "Pennsylvania Criminal Practice, Chapter 32, Section 32:10 (Probation, Parole, and Clemency)" to support his argument, (Pet'r's Traverse 5, 9), but there is no thirty day response requirement on the Board. *Cf. Pagan*, 2009 WL 210488, at *3 (petition for administrative review filed January 8, 2007 and denied on August 23, 2007).

[5] Petitioner did file in the Commonwealth Court a Motion to Reinstate/Reconsider his Petition for Writ of Mandamus, which was denied on September 24, 2014. (Pet'r's Traverse Ex. D). Petitioner also points out that he filed an Official Inmate Grievance in September of 2014 and a Prerequisite of Intent to Sue with the Office of the Attorney General and other Commonwealth officials. (Pet'r's Traverse 11-12). However, none of these materials satisfy his exhaustion requirement.

remedies with respect to this decision, as is his burden.  *See Toulson v. Beyer*, 987 F.2d 984, 987

(3d Cir. 1993) (providing that the habeas petitioner bears of the burden of establishing that he

has exhausted state court remedies).  Having reviewed the state court dockets, the Court finds no

basis to conclude that Petitioner ever undertook the administrative appeals process for this

decision.

        Because Petitioner's time for appealing the Parole Board decisions has passed, his

claims are now procedurally defaulted.  This Court cannot evaluate the merits of procedurally

defaulted claims unless the petition "establishes 'cause and prejudice' or a fundamental

miscarriage of justice' to excuse the default."  *McCandless v. Vaughn*, 172 F.3d 255, 260 (3d

Cir. 1999).  Petitioner has not alleged cause and prejudice, nor has he demonstrated his actual

innocence such that a lack of review by the court will constitute a fundamental miscarriage of

justice.  Accordingly, the Court recommends that his challenge to the decision of the

Pennsylvania Board of Probation and Parole be rejected because Petitioner failed to pursue his

state court remedies, and has not established appropriate grounds for this Court to consider his

claims in the first instance.

        However, the Court notes that the Commonwealth did not argue that Petitioner's claims

were procedurally defaulted because, at the time of its Response, Petitioner still had time to

exhaust them.  As a result, Petitioner arguably did not have warning of the need to argue cause

and prejudice.  In light of this consideration, the Court will consider the merits of Petitioner's

unexhausted claims.  *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus

may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies

available in the courts of the State.").

        **B.       Merits**

11

The Court concurs with Respondents that Petitioner's claims are without merit. The various constitutional violations Petitioner asserts arise from the same argument: Petitioner contends that when the maximum date for his sentence imposed on October 30, 1992 expired on December 13, 2011, the Board lost any authority to recompute the maximum date and/or detain him under that sentence.  However, under Pennsylvania law,

> A parolee under the jurisdiction of the board released from a correctional facility who, during the period of parole or while delinquent on parole, commits a crime punishable by imprisonment . . . to which the parolee pleads guilty or nolo contendere *at any time thereafter in a court of record*, may at the discretion of the board be recommitted as a parole violator.
>
> If the parolee's recommitment is so ordered, the parolee shall be reentered to serve the remainder of the term which the parolee would have been compelled to serve had the parole not been granted and . . . *shall be given no credit for the time at liberty on parole*.
> 61 Pa. Cons. Stat. § 6138(a)(1)-(2).

61 Pa. Cons. Stat. § 6138(a)(1)-(2) (emphasis added).  Petitioner does not dispute that *while delinquent on parole*, he committed a crime punishable by imprisonment, and that he pled guilty to this crime.  Under the statute, it is irrelevant that he pled guilty in December 2013, after the expiration of his maximum date of December 13, 2011.  Because Petitioner pled guilty to a crime resulting in imprisonment, and said crime was *committed* while he was on Parole, the Board retained the statutory authority to recommit him as a convicted parole violator, at which point he automatically forfeited credit for all the time he spent at liberty on parole.  Accordingly, Petitioner's various constitutional claims arising from the Board's recalculation of his maximum sentence date are without merit.

Because the issue which the petitioner seeks to raise here is both procedurally defaulted and meritless, it is recommended that the petition for a writ of habeas corpus be dismissed.

Moreover, because reasonable jurists could not conclude that a basis for appeal exists, I conclude that a certificate of appealability should not be issued.[6]


IV.     **CONCLUSION**

Based on the foregoing, I respectfully recommend that the petition for writ of habeas corpus be dismissed for failure to exhaust state-court remedies or, in the alternative, because the claims asserted are without merit.

Therefore, I respectfully make the following:

---

[6] Petitioner has failed to show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," or that jurists of reason would find this Court's procedural rulings debatable.  *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Therefore, I recommend that no certificate of appealability be issued.

**R E C O M M E N D A T I O N**

AND NOW, this   31st   day of March, 2015, it is respectfully recommended that the petition for writ of habeas corpus be DISMISSED.  It is further recommended that no certificate of appealability shall issue.

Petitioner may file objections to this Report and Recommendation.  *See* Local Civ. Rule 72.1.  Failure to file timely objections may constitute a waiver of any appellate rights.

BY THE COURT:

   /s/ Lynne A. Sitarski
LYNNE A. SITARSKI
UNITED STATES MAGISTRATE JUDGE